We will take up United States v. Breault. May it please the Court, counsel, my name is Kurt Mayer. I'm an attorney with the Federal Public Defender Office, and we represent Mr. Breault in his appeal before this Court. Excuse me. There's two issues I'd like to talk with the Court about this morning. First has to do with whether it was a probable cause for, excuse me. Take your water up if you want. First has to do with whether there was probable cause for the warrant to search Mr. Breault's home and personal computer. And the second has to do with whether the sentence that the Court gave of lifetime supervision was unreasonable. With regards to the probable cause issue, the first, excuse me, there are a first number of protections for materials that involve nudity, even those involving children. Not every picture of a naked child is pornographic, nor is it unlawful. And that's why the courts and the statutes are very specific about what constitutes child pornography. And that's also why this Court in repeated cases has required an image or a description of an image so that when the police are going into a person's home to go rummage through their personal belongings, they're not going after things that may be legal and that the person has a constitutional right to possess. But are you contesting that here, that he – that what they actually recovered, he had a right to possess? No, Your Honor. I'm not saying that. But the point of that is that in this particular case, the Court has to evaluate whether the search warrant application sufficiently described allegedly illegal images or photos that would be contained in Mr. Breault's computer. So I'm talking about the point previous to the actual going into the home. Well, one thing you have here that I don't see in all of the cases, and which I think is negative to your client, is how they came to have contact with your client, which is part of what is the probable cause in that a report of him watching kids in the schoolyard and then when the officers, you know, that apparently that, I mean, that he's taking pictures and that he's masturbating and he's within the area of the schoolyard and then the discussions that follow. And so, I mean, obviously when the, you know, that's – I mean, that has to be factored into the probable cause. I agree, Your Honor, because it still is a totality of a circumstances analysis. However, our position is, is that none of that, that was observed, as opposed to being admitted by him, none of that was observed as anything that was illegal, was per se illegal. Deplorable, yes. Repulsive, yes. But not necessarily legal. And certainly does not allow the inference from that behavior or from what he said that he had images that constitute child pornography on his home computer. Well, I guess I'm, you know, excuse me for being too literal or whatever, but the fact that he's watching children in a schoolyard and taking pictures and he's masturbating, I've seen cases that seem a lot less strong than that. Your Honor, in all the cases that the Court, or the cases that I've cited in my brief, that the Court has addressed this type of issue, be it Hill or Smith or Battershall, Battershall, excuse me, the Courts have an image or a description of an image in order to get into the person's computer. Like I pointed out, the fact that he, as far as the masturbating goes, there's, first of all, he didn't say that he was masturbating. He said he was touching himself, and that was only an admission by him, not that anybody observed that. Be that as it may, there's a lot of inferential leaps that have to be made in order to get to the point to say that this particular man has images that constitute child pornography on his computer. Are you saying, are you arguing right now that we should exclude his admission that he hunts on the Internet for Lolitas and has viewed them clothed and unclothed? Are you saying exclude that? No. Because that seems to give probable cause to search the computer. I disagree, Your Honor. I'm not saying that you should exclude it, but I disagree that it gives probable cause to search a computer. What I was about to say is if we can take, first of all, the term Lolita, what does that term mean? Well, it can't mean anything beyond little girls in this case because that's the only evidence before us. The second thing is that that typing in that term, Lolitas, is going to depend on what type of Internet tool, what type of search engine you're using when you type that in. And that just typing in Lolita is not going to give you, there's no evidence that's going to give you child pornography. As a matter of fact, there was a point that the government made during cross-examination of our, excuse me, our defense investigator where she was asked, do you know what type of search engine Mr. Breaux used? Do you know if he used Google? Do you know if he used any other type of search engine? She said no. She questioned our investigator about Kazaa, about LimeWire, about direct file sharing. Why does that matter? It matters because these are avenues with which a person can get to supposedly child pornography. If you simply have somebody saying I went on the Internet, I typed in Lolita, you don't get the inference that that, that the person brought up child pornography. You have no idea if that brings up images of child pornography or not. But this is a police officer who had specialized training in child pornography and sexual assault and all of those areas. It doesn't matter, Your Honor, because in this particular case, it's what? It's in the four corners of the warrant. The four corners of the warrant say that he used the Internet search term Lolita. It doesn't say, and I know that if you use a search term on this particular search engine, that you will get images of child pornography. It doesn't say that. And there's nothing in the record that allows a type of leak. You have to assume, first of all, that he, that you know what Internet tool he used to get to, what Internet tool he used when he typed that term in. You have to assume that that Internet tool is not filtered in any way. You then have to assume that the Internet tool or the search engine that you're using would actually link you to child pornography. They would actually let you to do that. Why couldn't you draw those inferences in the context of this situation? Because there's no factual basis. Based on experience. I'm sorry? Based on experience and in the context of how. Because there's no factual basis for it. He's not out there filming naked girls. He's, what he did, what he did is he's filming girls that are fully clothed. He talked about looking at clothed and unclothed on the Internet. But, again, that does not assume that this is child pornography. That's the point that I raised when I first talked about the First Amendment, because not every image of a naked child is necessarily pornographic. How do you get to the point of the magistrate focusing certainly on whether a particular image is child pornography or is protected by the First Amendment if you can't give that magistrate a description? I mean, this Court in Battershell talks about that. We don't even have what this Court had in Battershell where you have an officer saying he viewed an image that he described as a naked girl in a bathtub, 8 to 9 years of age. This Court found that not to be sufficient to establish that that was, that fit within the purview of child pornography. We don't even have that here. The inferential leaps that the Court has to make in order to get to that point are too wide and they can't be filled by any evidence. And anything beyond that is just simply speculation. What I was getting, a point I was making before about the inferences is if you look at, you have to know the Internet tool that he used. You then have to assume that he accessed the site with pornography, that he viewed those images. They just more, did more than view them because the Court's already said, the Court has to be more than a viewing. You have to, that he downloaded or stored them, that the images are of minor children as opposed to adults playing as minor children, that they were, the children were naked, that they were partially naked. And then you have to infer that they were engaged in sexually explicit conduct. Now, nothing in the record tells us that, that you can make the inference that the sexually explicit conduct included the first four elements, that being bestiality, masturbation, intercourse, or sadistic or masochistic displays. So then you're left with, well, was it a lascivious display of the genitals? Well, how do we know that? Again, I point out to the Court that in Smith, in Battershell, in Hill, these are all matters where the Court decided that you need a description in order to make that conclusion. Well, if he had said I like to look at child pornography, would you be entitled to get a search warrant for child pornography? I think that's a closer question, Your Honor. Again, it might not be too specific, but I believe, I mean, it's our position that this Court has said a description is necessary in these type of cases, a description regarding the type of image that may be found. The thing is that they're the only, those are almost always times when somebody takes his computer in for repairs and a repair person runs across a couple of images and turns it into the police to issue a warrant and make it stick. You want to know exactly what those images were. We're kind of back into this case from the other direction. You've got the man and you've got some conversations with him. Well, but I think the similarity is the cases like Kelly or Hay where, again, the Court, where the government, excuse me, the government kind of backs into finding the person. They find somebody who had been distributing it or they go, like in Gord, where they go onto a website and they find that these are child pornography images on there and then they look further and find that the defendant was a person who actually had a paid subscription for that. And the inference is that he looked at those because he had a paid subscription. The point that I'm making with that is that there's an investigation involved in that. And here our position is that investigation was deficient. It shouldn't fall on the back of Mr. Breaux that the investigation was deficient. Possibly they jumped the gun here that they went too soon without the sufficient materials to get a warrant. There are probably other ways that they could have gone about this to try and to get a warrant for Mr. Breaux's computer. They could have asked him more questions. They could have asked him, can you tell us the name of the websites that you visit? Can you tell us the search engines or the search programs that you use to get there? That would have helped a great deal in supporting this warrant. But they didn't ask those questions, although they had plenty of time to ask them.  that these images were found on his computer. Of course, you have to convince us that not only was there not probable cause, but that no reason that a reasonable officer couldn't have thought there were that it was a good warrant. I mean, my. I guess that's implicit in your argument. It is. It is, Your Honor. And that is true. I mean, if you look at it about the reasonable grounds, there's no reasonable grounds for believing that these images would be found on his computer. How does the detective who filled out this application explain objectively, without having viewed the photographs, that she knows that there's going to be illicit images of child pornography, because that's what they were searching for, on his computer? If the Court has no further questions about that, I just want to address the reasonableness of the sentencing issue. Three points that I just want to make here before the Court is, first of all, the Court, when it gave the sentence in this case of supervised, of lifetime supervised release, talked about it not being a greater deprivation of liberty than necessary. Well, that, first of all, is the wrong standard. The standard to be used is like in all sentencing cases, is whether, or excuse me, is to come up with a sentence that's sufficient but not greater than necessary. I think that's what he was trying to say. But he didn't say it, Your Honor. I mean, that's being a little demanding on a district court judge to say the precise words out of Section 3553. But I think it speaks to what he was really doing here. The fact is, is that he did not come up with a sentence that was sufficient but not greater than necessary. There was no factual support for it. It was simply derived directly from the guidelines that he took to be as what he should apply. What do you take, though, from his statement that, okay, this will be, this is what I'm going to do for now, and if he can come back in and get it modified? I think that's a huge problem. That was my second point. I think that's a huge problem, because that's not the standard. That places the burden on the defendant to come back later and say, I'm doing well enough now that you should lower my supervised release term. It should be sufficient but not greater than necessary. My question, then, is why isn't 5 years enough? Why isn't 10 years enough? This statute particularly allows the court to increase its supervised release if it wants to when it gives less than the maximum. That's the question. See, I guess I view it about exactly oppositely in the sense that I think this is necessary right now, but I'll be open in the future in terms of, you know, say, for example, he can show treatment. Treatment modalities could change from what are present right now that could better ensure public safety or any number of things that he would be willing to. But, you know, I'm reading the court to say, hey, the person I see right here in front of me right now needs to be, this needs to be a long supervision or for whatever, but the rest of your life is a long time. And if you can come in and show me otherwise or if circumstances have changed, I'm open to that. But, Your Honor, the point that we were trying to make is there has to be a factual basis for that. The court has to consider the 3553A factors. I know not all of them, but almost all of them. And there's no factual basis for that. Mr. Breaux had been on supervision for 4 years. He had already gone through psychological counseling and therapy. He had already done what he was supposed to do according to the social services. He started that weeks after he was arrested for this offense back in 2004. The social services from Orange County, after he petitioned to live with his family, let him go back to live with his family because of all the progress that he had made. He had not had any type of involvement with law enforcement after that time whatsoever. So there's no question. But he still got small kids at home, too, right? He does, Your Honor. And that's the point that I'm making. Well, can't a court be concerned about that and leave that in place? But the fact is, is that at that point, he had already been living with his children at home. He had made such progress that his social services people, who was working with the family, allowed him to return back home to live with his wife and to live with his children. Well, I may come as a surprise, but courts don't always have the greatest respect  Certainly. Certainly, Your Honor. Or they don't. They don't consider that to be, it's not, it's not, they don't say, they've exercised that discretion, so I'm not going to exercise mine. Be that as it may, Your Honor, but there was also an independent therapist who treated Mr. Breaux who said that he had made great progress. He addressed this particular therapist was somebody who worked with people who had been charged with sex offenses to help rehabilitate them. He said that he had made such great progress that he, too, agreed that he should go back there. And Mr. Breaux saw this therapist on a weekly basis, so he had a lot of contact with them. All right. Well, thank you, counsel. Thank you. Good morning. May it please the Court. The government respectfully requests that this Court affirm both the denial of the defendant's motion to suppress and the district court sentence, which included the life-term supervised release.         Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. That coffee's in order. The defendant is asking this Court to make a brightline ruling about the type of evidence, not the sufficiency of the evidence, but the type of evidence necessary to obtain a search warrant in a child pornography investigation. And that rule would be contrary to the entire breadth of case law concerning search warrants, that the Court must look, and the issuing magistrate must look at the totality of the circumstances, determine whether there's a fair probability that the evidence or contraband will be found. As Judges Callahan and Cambia noted, this case is distinguishable from other child pornography investigations because defendant here was initially contacted on the beach while filming children, while admittedly touching himself, with wet spots on his shirt, and he later admitted that that was for sexual gratification, and he intended to take that tape back home for the purposes of sexual arousal. That is absolutely different and distinguishable. This Court should make that distinction between the cases, as Judge Cambia noted, of a computer repairman who comes across child pornography, and the only probable cause is the image that was viewed and the nature of that image. Here I think another important distinction is the fact that the issuing magistrate was a California State judge and was reviewing the application under California State law. Defendant argues that there is no distinction between California and Federal law on this point. I would just ask the Court to look at the California Penal Code section, which is included in the government's footnote, that the child pornography definition in state court does involve the exhibition of the genitals or pubic or rectal area for purposes of sexual stimulation of the viewer. And here there was significant probable cause that the effect on the viewer here, the effect on the defendant, was for sexual gratification when he both videotaped clothed children in public, but more importantly for purposes of the affidavit, when he hunted for lolitas on the Internet. How did this case get into Federal court? Due to the nature of the conduct, one of the detectives at Newport Beach Police Department contacted an Immigration and Customs Enforcement agent that she had worked with previously, referred the case for Federal consideration that was presented to my office at that point, because the local authorities were concerned about the nature of the conduct and that it was broader in scope than just child pornography. In addition, I believe at that time child pornography was a misdemeanor in state court. It's since been that legislation has changed and it can be a felony or a misdemeanor. Here the defendant admits sexual gratification that he viewed unclothed young girls. Therefore, the only issue is if the images depicted the exhibition of the genital or other sexual area of the child. It does not need to be lascivious or lewd. The focus is on the viewer and on the effect of the viewer, which is not an issue here. Therefore, the government submits that there was a fair probability based on the fact that the defendant said he viewed unclothed minor pictures on the Internet and that he viewed them for sexual gratification. Here the standard is not beyond a reasonable doubt. It is that fair probability standard that the evidence would be found. And what the defense is asking this Court to do is to impose not only this bright line rule about an image description, but also heighten standard about the certainty with which the magistrate must find that the evidence will be found. And that would profoundly shift the standard that has existed for many years. I'm not sure.  And it's certainly hard from the argument that appellant is raising only the nature of the evidence that must be submitted to the magistrate. It seems to me there's certainly an oral argument. There's also an argument about sufficiency. He's just saying there's no reason to think that there would be child pornography. I don't know if that's true. I think he is contesting the sufficiency, but the way he's contesting the sufficiency is saying that you necessarily must have an image description. And what I'm arguing is that does create a rule about the type of evidence that must be submitted. Well, you may also be saying, look, the evidence that's being submitted to the magistrate is that the evidence that's being submitted to the magistrate is the evidence that   that's being submitted to the magistrate. He knows he likes to look at young girls, but they're closed. And if even if he looks at closed young girls on the Internet and becomes sexually aroused, that doesn't mean that he's watching child pornography. That's correct, Your Honor. I think the distinction here, though, is he admitted to viewing unclothed minors. And if he had not made that statement, this would be a different case. But he did. And when he was the detective asked him closed or unclothed, the defendant responded all of the above. And I think that that's enough to create a probability. Here, as I said, the fact that he made specific remarks as to sexual attraction to prepubescent minors approximately 12 years old, the fact that he admitted to the sexual gratification to the public taping of children. The Laliat search term, the defendant would ask the Court to accept that depending on the search engine that has a profound impact on a reasonable influence that can be drawn from that term. However, the term Laliat does not only mean a young girl. There is a sexual connotation with that term alone that I think is important. And even though the defiant did not make that perfectly clear to the magistrate, I think that's within common knowledge. And the Court can accept that the magistrate viewed that term as having a sexual connotation. Kagan. I think Laliat doesn't mean the same as preteen. Correct, Your Honor. Yes, Your Honor. Because I think the nature of the novel, there is a sexual connotation there that the magistrate, if it did rely in whole or in part on that portion of the probable cause standard, was important. To the extent that the government cross-examined the investigator on that point, it was because the defendant had submitted evidence that putting in the term Laliat into standard search engines such as Google revealed many responses relating to the novel. The government doesn't dispute that. The point in cross-examination was that that term, depending on the context, and yes, we don't know which search engine or computer program he was using at the time, does have a special meaning within that community. And a Google search alone doesn't answer any of the inferences that the magistrate could have drawn from that term. As Judge Callahan pointed out, the circumstances of the contact on the beach are really critical to understanding the nature of the investigation and the probable cause. And to the extent that the Court is concerned at all with any of the arguments raised in the reply brief with regard to whether the appliance statements were misleading or false, the government would ask the Court to look at the government's briefing below on an issue, which is that the government's excerpt of records at 45, which the government goes through in great detail, and sending forth the transcript from the interview at the police station, followed up with the affidavit statement and why those statements were not false. And the fact that the district court was correct in finding, with one exception, it was concerned about one of the statements in the affidavit regarding the defendant's statements about or purported statements about his sexual interest in his own children, that those statements were not misleading and there was no bad faith and, therefore, there was no adverse strengths determination in this case. Can you talk about the lifetime supervised release? The statute says not less than five and up to life. And I guess the argument as to sentencing made the point that the judges are now doing this in child pornography cases all over the map. I mean, are there any standards or should there be some kind of set of reasons that are required to be given when you choose a point between five and life? That can be, depending on how old the person is, that can be a very long time. And it seems like some judges are giving five and some judges are giving life, and nobody is giving in between, which means is that, you know, it's not a reasoned decision. Otherwise, you maybe come up with something in between. And, Your Honor, I think there that is a concern. I mean, I think part of the reason that the life term has become more prevalent is in part due to the fact that the guidelines in 5D1.2 subsection B do recommend that maximum term, absolutely recognizing that the guidelines are advisory. I think that the fact that the government is pursuing more longer terms of supervised release in part on that basis, there needs to be an analysis of that, and that analysis should be under a reasonableness standard. And it should be under the same standard as this Court has set forth in cases such as Noes v. Gunn in that a checklist-type recitation is not necessary in order for the district court to adequately set forth his reasons. But there does need to be an analysis. And I would just remind the Court that the government is arguing that in this case, that should be under a plain error standard since defendant did not raise the district court's recitation of factors below. They did raise the reasonableness, which should be reviewed under a different standard, but in terms of examining whether the district court properly analyzed the case, that should be under a plain error standard. And I submitted to the Court that the district court did a very good job in this case. I don't know how you separate out. I mean, the objection was that they were objecting to the life term. I mean, they don't have to make such a specific objection in order to get the kind of review that we should be giving this. I don't think it's really a plain error standard type of review. And they clearly made the objection. And I don't think I have the written objections, if there were any. But it sounds like there were some. So they did object. And the reasons the Court gave here is that he wants to start off with lifetime supervised release. He's inviting a return. And then he gives congressional intent and the nature of the offense. Well, the offense is what, possession? It is possession of child pornography, Your Honor. But I would submit to the Court that the district court was also reviewing the totality of the nature of the offense, which includes the videotaping of children on the playground, includes the touching of himself, includes all of the statements that he made at the police station. I think that the district court ---- Didn't he make some comments about his own children, too? Yes, Your Honor. That it had crossed his mind. Yes, Your Honor. And he went back and forth on whether that was disturbing to him and how he felt about that. But clearly it had crossed his mind, and any court would be extremely concerned about that. Also, Your Honor, I don't know if this helps address your point, but in the Daniels decision, the court looked at the transcript as a whole, the sentencing transcript, and noted that while the district court did not specifically articulate its reasons for the lifetime supervised release term, the fact that it commented on other aspects of the sentence and the aggravating and mitigating factors, that was sufficient. And I would submit to the Court that that's the situation here. Here, the district court calculated the offense label, weighed aggravating and mitigating. It did have the therapist's information before the court. I will note that that therapist's letter was from 2005, and the sentencing was in 2008. So if the district court gave little weight to that letter, I think that was certainly proper. But ---- Well, is there any proportionality analysis between the length of the sentence and the length of supervised release? Your Honor, it's my understanding that they should be separate considerations, although I do think in this case that it is appropriate to review that. This case was under the old guidelines. He received a low-end sentence of 27 months that both or, sorry, that the government recommended, the defense recommended something less. But that sentence would have been significantly longer under the new guidelines. And whether that was proper for the district court to consider or not, I can't speak to that issue. But I do think reviewing a period of incarceration with the continued risk to the public is important. It just seems as though if you're going to do sort of a reasoned analysis, it shouldn't ---- the sentence, it shouldn't always be coming up. It's either five years or it's life. There should be some kind of reason. I mean, even by the government and, you know, in its recommendations. Your Honor, I can tell you in other cases I have recommended terms between the five years and life. However, I strongly requested that the court impose life in this case for all the reasons that we've discussed and the continued danger. And this wasn't a case of, and I don't want to trivialize this, but trading of child pornography on the Internet. This was active conduct in the community that was of great concern both to law enforcement and to the prosecutor's office. Which is normally, that's why I asked my first question. It's normally brought under state law. It's just interesting that this one ended up in federal court with these guidelines. Yes, Your Honor. If there's any other questions, I'll submit it. Okay. Thank you, Your Honor. Thank you. All right. United States v. Breaux will be submitted.
judges: Canby, Wardlaw, Callahan